United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 04, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| **HTX WELLNESS GROUP, LLC,** | § | **No. 24-34239** |
| | § | **Chapter 11** |
| Debtor. | § | |

---

### ORDER CONFIRMING SMALL BUSINESS PLAN
### UNDER SUBCHAPTER V, CHAPTER 11

---

On March 4, 2024, the Court held a continued hearing to consider the confirmation of the Third Amended Plan of Reorganization for Small Business under Subchapter V, Chapter 11 (ECF no. 89) ("Plan" or "Third Amended Plan") filed by the Debtor.

Pursuant to Order Canceling Hearing on Confirmation and Setting Confirmation Hearing (ECF no. 70) ("Order Setting Hearing"), the Court finds the Debtors served copies of the Second Amended Plan of Reorganization for Small Business under Subchapter V, Chapter 11 (ECF no. 67), Order Setting Confirmation Hearing, and ballots for impaired classes on January 31, 2025) (ECF no. 86).

The Court finds that the Third Amended Plan does not materially alter the treatment of allowed claims and interests in Classes 4. Rather, the amendments to the plan further define the terms upon which iCRYO Franchise Systems, LLC will be assigned the Debtor's lease and pay the allowed claim due to Paragon Bank.

**Objections to the Plan**. No objections to the Plan were filed.

**Plan Acceptances and Rejections**. The Plan provides for 5 classes of claims and interests. Plan acceptances and rejections are summarized in the table below:

| Class | Description | Status |
|-------|-------------|--------|
| 1 | Paragon Bank | abstained |
| 2 | AILCO Equipment Co. | Accepts |
| 3 | Priority claims | Empty |
| 4 | General unsecured claims | Accepts |
| 5 | Equity interests | Accepts |

The Court has reviewed the Summary of Plan Acceptances and Rejections, along with the ballots, (ECF no. 86) and finds that the Accepting Classes accepted the Plan in accordance with the standards set forth in 11 U.S.C. § 1126(c). Further, Unimpaired Classes are deemed to have accepted the Plan. *See* 11 U.S.C. § 1129(a)(8). Empty classes are not considered for purposes of whether the Plan is consensual.

While Paragon Bank did not cast a ballot, the Court finds Paragon Bank, by statements made on the record by its counsel, has accepted the Plan. Further, the Court finds that it is unimpaired under this Plan.

Based upon the foregoing Plan Acceptances and Rejections, the Court finds that the Plan is a *consensual plan* pursuant to 11 U.S.C. § 1191(a).

**IT IS THEREFORE ORDERED THAT** the Third Amended Plan of Reorganization for Small Business under Subchapter V, Chapter 11 (ECF no. 89) ("the Plan") is CONFIRMED as a Consensual Plan pursuant to 11 U.S.C. § 1191(a), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date. The terms of the Plan and the Debtor's or Reorganized Debtor's entry into any related documents and performance thereunder, including, without limitation, all

documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtor and Reorganized Debtor are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

**IT IS FURTHER ORDERED THAT** the following nonmaterial modifications to the Plan are approved:

1. Nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Order enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

2. Further, nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it

may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

**IT IS FURTHER ORDERED THAT** the provisions of the Plan and any documents executed in conjunction with the Plan and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on: (a) the Debtor; (b) all holders of Claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of Claims and Interests voted to accept the Plan; and (c) each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

**IT IS FURTHER ORDERED THAT** to the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

**IT IS FURTHER ORDERED THAT** in the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

**IT IS FURTHER ORDERED THAT** the Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

**IT IS FURTHER ORDERED THAT** nothing in this Confirmation Order shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtors' Schedules or arising under Chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in

the Plan but are nonetheless owned by the Debtor on, or before, the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

**IT IS FURTHER ORDERED THAT** except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be deemed timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

**IT IS FURTHER ORDERED THAT** the Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

**IT IS FURTHER ORDERED THAT** Debtor shall not be discharged of its debts in accordance with 11 U.S.C. § 1141(d)(3).

**IT IS FURTHER ORDERED THAT** the duties of the Subchapter V Trustee in the Debtor's bankruptcy case shall terminate as provided under 11 U.S.C. § 1183(c)(1).

**IT IS FURTHER ORDERED THAT** this Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

**IT IS FURTHER ORDERED THAT** the Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

**IT IS FURTHER ORDERED THAT** by Friday, April 4, 2025:

1. All objections to claims must be filed.

2. All claims arising from the rejection of an executory contract or unexpired lease must be filed.

3. All applications for approval of professional fees as an administrative priority
   expense must be filed.


Signed: March 04, 2025

Jeffrey P. Norman
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re | § | |
| | § | |
| **HTX WELLNESS GROUP, LLC,** | § | **No. 24-34239** |
| | § | **Chapter 11** |
| Debtor. | § | |

---

**SECOND AMENDED PLAN OF REORGANIZATION
FOR SMALL BUSINESS UNDER SUBCHAPTER V, CHAPTER 11**
Dated March 3, 2025

---

THIS PLAN OF REORGANIZATION ("THE PLAN") IS SUBMITTED TO ALL CREDITORS AND INTEREST HOLDERS OF THE DEBTOR, HTX WELLNESS GROUP, LLC, ENTITLED TO VOTE ON THE CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY THE DEBTOR PURSUANT TO THE SMALL BUSINESS REORGANIZATION ACT, CODIFIED IN SUBCHAPTER V OF CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. 11 U.S.C. §§ 1181–1195. THIS PLAN OF REORGANIZATION CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. ALL CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE ENTIRE PLAN CAREFULLY.

A CONFIRMATION HEARING FOR THIS PLAN OF REORGANIZATION WILL BE HELD IN COURTROOM 403 AT THE UNITED STATES COURTHOUSE, 515 RUSK, 4TH FLOOR, HOUSTON, TX 77002 ON MONDAY, MARCH 3, 2025 AT 10:30 A.M. PARTIES MAY APPEAR IN PERSON OR VIRTUALLY BY VIDEO. PARTIES SHOULD CONSULT THE COURT'S WEBSITE FOR INSTRUCTIONS ON APPEARING IN COURT.[1]

CREDITORS AND INTEREST HOLDERS ENTITLED TO VOTE ON THE PLAN ARE URGED TO VOTE IN FAVOR OF THIS PLAN OF REORGANIZATION AND TO RETURN THE COMPLETED BALLOT TO PENDERGRAFT & SIMON, LLP, 2777 ALLEN PARKWAY, SUITE 800, HOUSTON, TX 77019 NOT LATER THAN MARCH 26, 2025. VOTES WILL BE TABULATED

---

[1] https://www.txs.uscourts.gov/page/united-states-bankruptcy-judge-jeffrey-p-norman

WITH RESPECT TO THE DEBTOR'S PLAN AND CLAIMS WILL BE CLASSIFIED AND DISTRIBUTIONS IN ACCORDANCE WITH THE PLAN.

TO THE EXTENT THE DEBTOR DOES NOT RECEIVE SUFFICIENT VOTES FOR CONFIRMATION OF A CONSENSUAL PLAN, DEBTOR INTENDS TO INVOKE THE CRAMDOWN PROVISIONS OF SECTION 1129(b) OF THE BANKRUPTCY CODE IN ORDER TO OBTAIN CONFIRMATION OF THE PLAN. ALTERNATIVELY, THE PLAN MAY BE WITHDRAWN AND A NEW PLAN SUBMITTED.

THIS PLAN INCORPORATES BY REFERENCE CERTAIN DOCUMENTS RELATING TO THE DEBTOR THAT ARE NOT PRESENTED HEREIN OR DELIVERED WITH THIS PLAN, INCLUDING, BUT NOT LIMITED TO, THE DEBTOR'S SCHEDULES, THE DEBTOR'S STATEMENT OF FINANCIAL AFFAIRS, AND THE DEBTOR'S MONTHLY OPERATING REPORTS. THESE AND ALL OTHER DOCUMENTS AND PLEADINGS FILED WITH THE COURT PERTAINING TO THIS CASE ARE AVAILABLE FROM THE CLERK OF THE COURT (515 RUSK, 5TH FLOOR, HOUSTON, TX 77002, TEL. 713-250-5500). ELECTRONIC ACCESS TO THESE DOCUMENTS AND PLEADINGS IS AVAILABLE AT HTTP://ECF.TXSB.USCOURTS.GOV. A PACER LOGIN WILL BE NECESSARY TO VIEW THE DOCUMENTS. IF YOU DO NOT HAVE A PACER LOGIN, YOU MAY REGISTER ONLINE AT HTTP://PACER.PSC.USCOURTS.GOV.

## Table of Contents

I. Background for Case Filed Under Subchapter V ................................................................. 5

    A.  Description and History of the Debtor's Business ............................................. 5

    B.  Liquidation Analysis .......................................................................................... 5

    C.  Ability to make future plan payments and operate without further reorganization .......... 6

II. Summary .................................................................................................................... 6

III. Definitions ................................................................................................................ 7

IV. Treatment of Administrative Expense Claims, Priority Claims, and Quarterly and
Court Fees ................................................................................................................... 9

    A.  Unclassified claims ............................................................................................ 9

    B.  Administrative expense claims .......................................................................... 9

    C.  Priority tax claims ............................................................................................ 10

        1.  Property Taxes ......................................................................................... 10

        2.  Sales and/or Franchise Taxes ................................................................. 11

    D.  Statutory fees .................................................................................................... 11

V. Treatment of Claims and Interests Under the Plan ................................................... 11

    A.  Class 1 – Secured claim of Paragon Bank ....................................................... 11

    B.  Class 2 – Secured claim of AILCO Equipment Finance Group ...................... 12

    C.  Class 3 – Priority Claims .................................................................................. 13

    D.  Class 4 – General Unsecured Claims ............................................................... 13

    E.  Class 5 – Equity Interests of the Debtor .......................................................... 13

VI. Allowance and Disallowance of Claims .................................................................. 14

    A.  Disputed claim .................................................................................................. 14

    B.  Objections to claims .......................................................................................... 14

    C.  Delay of distributions on a disputed claim ....................................................... 14

    D.  Anticipated claims objections ........................................................................... 14

    E.  Settlement of disputed claims ........................................................................... 15

VII. Provisions for Executory Contracts and Unexpired Leases ................................... 15

    A.  Assumed executory contracts and unexpired leases ......................................... 15

    B.  Rejected executory contracts and unexpired leases .......................................... 15

1. Special provisions related to rejection of Lease Agreement—Brixmor Holdings 12 SPE, LLP ...................................................................................................15

2. Special provisions related to rejection of Franchise Agreement—iCRYO Franchise Systems, LLC ..................................................................................................16

VIII. Post-Confirmation Management ...........................................................................16

IX. Means for Implementation of the Plan..................................................................16

   A. Assumption of Lease Agreement by iCRYO....................................................16

   B. Payment of secured claims by iCRYO.............................................................16

   C. Retained claims ...............................................................................................17

   D. Distributions by Debtor under a consensual Plan ..........................................17

   E. Distributions by Debtor under a nonconsensual Plan .....................................17

   F. Periodic Reporting ...........................................................................................17

   G. Access to Debtor's business premises .............................................................17

   H. Interim provisions between Confirmation Date and Effective Date .................17

X. Effect of Confirmation ..........................................................................................18

   A. Binding Effect of Confirmation.......................................................................18

   B. Injunctions related to Debtor ..........................................................................18

   C. Injunctions related to Debtor's members ........................................................19

   D. Vesting of Assets.............................................................................................19

   E. Exculpation and Limitation of Liability ..........................................................19

XI. Discharge .............................................................................................................19

XII. Other Provisions .................................................................................................20

   A. Employment of professionals after the Effective Date .....................................20

   B. Final Decree ...................................................................................................20

   C. Reservations of right to amend Plan ...............................................................20

   D. Alternative plans of reorganization .................................................................20

   E. Severability .....................................................................................................20

   F. Headings.........................................................................................................20

   G. Controlling effect............................................................................................21

   H. Retention of jurisdiction .................................................................................21

# I.
## Background for Case Filed Under Subchapter V

### A.  Description and History of the Debtor's Business

The Debtor is a limited liability company formed and organized under the laws of the State of Texas. The Debtor was formed in January 2021 by Lindsay Dalton and Shaun Six, who have served as Co-Managers of the Company at all times. The Company was organized and has operated at all times as a franchisee of iCRYO Franchise Systems, LLC to operate a business providing whole-body and local cryotherapy, infusion services, compression therapy, and red-light therapy, under the iCRYO brand name at 3839 Bellaire Blvd., Houston, TX 77027

As a franchisee of iCRYO, the Debtor outsourced its marketing, website, and social media presence to iCRYO and has relied upon iCRYO to supply it with most of its customers. The Debtor has typically averaged between 80–110 customers who purchase packages of therapy services, and many of these customers are repeat customers.

Leading up to the present bankruptcy case, the Debtor's cash flows became insufficient to be able to service its long-term debts due to increases in interest rates; increased franchise-related fees; and a lack of growth in its customer base. Ultimately, on September 11, 2024, the Debtor sought relief in this bankruptcy case in order to sell its assets and the ongoing business in an orderly manner in order to pay its debts.

While operating in bankruptcy, the Debtor continued to pursue negotiations with Dr. Mona Shah where: (1) a business entity under her management and control would purchase the Debtor's assets and take over the leased premises and operate a physical therapy business, and (2) the Debtor would reject the iCRYO franchise agreement in order to enable Dr. Shah to provide comprehensive physical therapy services as part of her medical practice.

In December 2024, these negotiations ended when iCRYO Franchise Systems asserted its rights under the franchise agreement with the Debtor to assume the Debtor's lease and operate the franchise. This Second Amended Plan reflects the changed means for effectuating the Debtor's reorganization and modifies the projections as to the monies that will ultimately be received by the creditors holding allowed claims.

### B.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit A.

In a hypothetical liquidation of the bankruptcy estate of the Debtor, the liquidation value of the assets is insufficient to pay any general unsecured claims of the Debtor. The only unsecured claims that would be paid would be minimal administrative priority expenses incurred by a Chapter 7 Trustee and the professionals employed by a Chapter 7 Trustee.

Moreover, in a hypothetical liquidation, iCRYO would retain the same rights that it is exercising in this Plan.

Accordingly, the Debtor asserts that the reorganization of its bankruptcy estate which is proposed in this Plan will maximize the recovery that its general unsecured creditors will receive and that a liquidation under Chapter 7 would not be in the best interest of the creditors.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## C.   Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. Here, the Debtor does not plan to operate any business following the Effective Date, except for those matters incidental to the effectuation of this Plan. Any material future income after the Effective Date is not anticipated; therefore, no future projections about the Debtor's business operations are being made.

## II.
## Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of HTX Wellness Group, LLC (the *Debtor*) by: (1) iCRYO exercising its rights under the Franchise Agreement to assume management of the franchise held by the Debtor, and (2) iCRYO paying or assuming the liability for the secured debts to the extent such debts are secured by collateral constituting business personal property of the Debtor's business.

This Plan provides for five classes of claims, described in the table below:

| | |
|---|---|
| **Class 1** | The claim of Paragon Bank, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 2** | The claim of AILCO Equipment Finance Group, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 3** | All Allowed Claims entitled to priority under 11 U.S.C. § 507(a) (except administrative expense claims under 11 U.S.C. § 507(a)(2) and priority tax claims under 11 U.S.C. § 507(a)(8). This is an empty class; Debtor does not anticipate any Allowed Claims in this class but is keeping it available for such Allowed Claims out of an abundance of caution. |
| **Class 4** | All non-priority unsecured claims allowed under 11 U.S.C. § 502. |

**Class 5**                     Equity interests of the Debtor.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at a *di minimis* amount. This Plan also provides for the payment of administrative claims and priority claims, to the extent such claims are entitled to priority.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

**III.**
**Definitions**

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan and they are supplemented by the following definitions:

"***Administrative Claim***" or "***Administrative Priority Claim***" means a Claim that is entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b)(1)–503(b)(9), 506(c), or 1103 asserted in this case, which Claims are described in Section IV of this Plan and treated in Section IV of this Plan.

"***Administrative Claim Bar Date***" means the date set by the Court by which administrative claims entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b), 506(c), or 1103 asserted in these cases, including substantial contribution claims, must be filed. Debtor will request that the Court set the Administrative Claim Bar Date by separate order of the Court.

"***Allowed Claim***" means a Claim or any portion thereof:

1. that has been allowed by a Final Order,

2. that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or

3. that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an administrative claim, such claim is allowed by a Final Order .

"*Allowed Claim*" further means an administrative claim as to which a timely request for payment has been made in accordance with this Plan—if such written request is required—or other administrative claim, in each case as to which:

1. a timely objection has not been filed, or

2. a timely objection is filed, and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

"*Claim*" means a claim against any of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in 11 U.S.C. § 101(5).

"*Claims Bar Date*" means the last date holders of non-administrative claims that are not governmental units may file claims against the Debtor's Bankruptcy Estate—December 2, 2024.

"*Confirmation*" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

"*Confirmation Date*" means the date of entry by the Bankruptcy Court of the Confirmation Order.

"*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan.

"*Disposable Income*" means the income that is received by the debtor and that is not reasonably necessary to be expended: (1) for the maintenance or support of the debtor or a dependent of the debtor or a domestic support obligation that first becomes payable after the Petition Date; or (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

"*Effective Date*" will be deemed to have occurred when the following conditions are met: (a) at least fifteen (15) days have elapsed since the Confirmation Date; (b) all agreements and personal guarantees related to the assumption of the lease agreement with Brixmor Holdings are executed by Brixmor Holdings, iCRYO, and its personal guarantor(s), as described in section VII(B)(1); and (c) Paragon Bank's Allowed Claim is paid in full by iCRYO on, or before, April 1, 2025, as described in Section V(A).

"*Final Order*" means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

"*Franchise Agreement*" means the agreement of November 11, 2020 between the Debtor and iCRYO Franchise Systems, LLC and its addendums incorporated into the same.

"*Government Claims Bar Date*" means the last date holders of non-administrative claims that are governmental units may file claims against the Debtor's Bankruptcy Estate—March 13, 2025.

"*Impaired*" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of 11 U.S.C. § 1124.

"*Plan*" means this Plan of Reorganization, as it may be further amended or supplemented.

"*Priority Claim*" means a Claim asserted under 11 U.S.C. §§ 507(a)(3)–507(a)(10) against the Debtor's Bankruptcy Estate.

"*Secured Claim*" means a Claim, other than a setoff claim, that is secured by an encumbrance, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the effective date or such later date as is established by the Bankruptcy Court, of such interest or encumbrance as determined by a Final Order of the Bankruptcy Court pursuant to 11 U.S.C. § 506 or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"*Subchapter V Trustee*" means Melissa Haselden, who was appointed by the U.S. Trustee to serve as the Subchapter V Trustee and carry out those duties specified in 11 U.S.C. § 1183.

"*Substantial Consummation*" means: (a) transfer of all or substantially all of the property proposed by the Plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan; and (c) commencement of distributions under the Plan.

"*Unimpaired Claim*" means a claim that is not an impaired claim.

"*Unsecured Claim*" shall mean a claim that is not entitled to priority under 11 U.S.C. §§ 507(a)(1)–507(a)(9) and includes deficiency claims of any of the secured creditors.

## IV.
### Treatment of Administrative Expense Claims, Priority Claims, and Quarterly and Court Fees

**A.   Unclassified claims**

Under 11 U.S.C. § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**B.   Administrative expense claims**

Subject to Court approval of a fee application(s), each holder of an administrative expense claim allowed under 11 U.S.C. § 503, will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtor anticipates there will be three administrative expense claims made by: (1) Pendergraft & Simon, LLP, counsel for the Debtor-in-Possession, (2) Melissa Haselden, the Subchapter V Trustee, and (3) Brixmor Holdings 12 SPE, LLC, the Debtor's landlord. All claims for administrative expenses will require the submission of a fee application and approval of the said fee application by the Bankruptcy Court before any claim can be paid.

The Debtor anticipates that administrative claims will be as follows:

| Claimant | Amount |
|---|---|
| Pendergraft & Simon, LLP | $5,000.00 |
| Melissa Haselden | 7,500.00 |
| Brixmor Holdings 12 SPE, LLP | 53,770.00[2] |
| Total | $66,270.00 |

In the event any administrative fee has not been approved by the Court by the Effective Date, the Debtor will hold such amount in reserve until approval.

## C.  Priority tax claims

Upon information and belief, the Debtor owes no taxes to any taxing authority. In the event a taxing authority files a proof of claim prior to the Government Claims Bar Date, the Debtor will pay such claims as follows:

## 1.  Property Taxes

Property taxes for the 2024 tax year are not currently due and will not be considered delinquent until February 1, 2025. *See* Tex. Tax Code. § 31.02.

The Priority Tax Claims for property taxes arising under the Texas Tax Code (collectively the "Ad Valorem Taxing Authorities") are also secured claims under 11 U.S.C. § 506(b) and are secured by a first-in-priority, statutory lien on all the Debtor's assets pursuant to Tex. Tax Code § 32.01.

Notwithstanding anything to the contrary contained within the Confirmed Plan, property taxes for the year 2025 that arose subsequent to the Effective Date and which become due beginning after the Effective Date to any Ad Valorem Taxing Authority shall be paid by iCRYO when such taxes become due. For illustration and as an example, assuming the Effective Date is April 1, 2025, ICRYO would only be responsible for taxes that are for ownership of the applicable property after April 1, 2025. Any property taxes for years 2023 and prior shall bear interest at the statutory rate

---

[2] Subject to agreement between Brixmor Holdings and iCryo.

of 12 percent per annum accruing from the Petition Date until said taxes are paid in full. The property taxes for the 2024 tax year shall bear interest at the statutory rate of 12 percent per annum beginning February 1, 2025, until said taxes are paid in full. Any, and all, statutory tax liens securing prepetition and post-petition taxes shall be retained until such taxes are paid in full. Nothing in this Plan shall relieve the Debtor from any personal liability for the payment of property taxes as set forth in Tex. Tax Code § 32.07.

**2.  Sales and/or Franchise Taxes**

To the extent the Comptroller of Public Accounts has an Allowed Claim for unpaid franchise taxes or sales taxes, any Allowed Claim will be paid at the Effective Date of the Plan, inclusive of all statutory penalties and interest allowed under the Texas Tax Code.

**D.  Statutory fees**

Under Subchapter V, there are no statutory fees required to be paid under 28 U.S.C. § 1930.

**V.**

**Treatment of Claims and Interests Under the Plan**

Claims and interests shall be treated as follows under this Plan:

**A.  Class 1 – Secured claim of Paragon Bank**

**Description**. Class 1 consists of a single, secured claim held by Paragon Bank. As of the Petition Date, Paragon Bank has an Allowed Claim in the amount of $264,354.33, which bears interest at variable rate equal to the *Wall Street Journal* Prime Rate + 2.75%. As of the Petition Date, this rate 11.25 percent. Payment of this claim is secured by a lien on:

> all equipment and machinery, including power driven machinery and equipment, furniture and fixtures now owned or hereafter acquired, and wherever located together with all replacements thereof, all attachments, accessories, parts and tools belonging thereto or for use in connection therewith and proceeds therefrom. All inventory, raw materials, work-in-progress and supplies now owned or hereafter acquired, proceeds therefrom and wherever located. All accounts and accounts receivable now outstanding or hereafter arising. All contract rights, instruments, documents, chattel paper and general intangibles now in force or hereafter acquired and proceeds therefrom.

A UCC Financing Statement, perfecting this lien was filed with the Texas Secretary of State on November 22, 2021.[3]

---

[3] *See* Claim 3.

**Treatment**.  At the Effective Date, Paragon Bank will have an Allowed Claim of $264,354.33, *plus* all interest that has accrued since the Petition Date, *less* those adequate protections payments received by it between the Petition Date and the Confirmation Date. Debtor estimates that the total Allowed Claim as of the Effective Date will be approximately, $267,907.37. No later than seven (7) days after the Confirmation Date, Paragon Bank shall provide the Debtor and iCRYO with a payoff statement with a current calculation of the Allowed Amount of Paragon Bank's claim, plus the per diem interest accruing on such Allowed Amount. To the extent such payoff statement differs from the estimated amount above, the amount in the payoff statement shall be deemed to be the Allowed Claim for purposes of the treatment of this Claim.[4]

The Allowed Claim of Paragon Bank will be treated under this Plan by iCRYO paying the full amount due on, or before, April 1, 2025. The amount to be paid to Paragon Bank on its Allowed Claim shall be agreed upon by iCRYO and Paragon Bank. Following the Effective Date, the Debtor and its Estate shall have no further liability for payment to Paragon Bank except as provided herein. As consideration for iCRYO's payoff of Paragon Bank's Allowed Claim, all assets subject to the lien of Paragon Bank shall be transferred to iCRYO upon the Effective Date. Debtor shall cooperate with iCRYO in completing such transfer of assets.

Paragon Bank will retain all of its liens in all property described in its UCC Financing Statement until it has received full and final payment by iCRYO.

**Impairment**.  Impaired.

**B.   Class 2 – Secured claim of AILCO Equipment Finance Group**

**Description**.  Class 1 consists of a single, secured claim held by AILCO Equipment Finance Group ("AILCO").[5] As of the Petition Date, AILCO has an Allowed Claim in the amount of $41,451.44, which bears interest at 12.5 percent. Payment of this claim is secured by a purchase-money lien on an Everest Peak Electric whole-body cryotherapy chamber (serial no. C162108).

**Treatment**.  At the Effective Date, AILCO will have an Allowed Claim of $41,451.44, *plus* all interest that has accrued since the Petition Date. Debtor estimates that the total Allowed Claim as of the Effective Date will be approximately, $43,722.29; however, the final amount Allowed Amount may be adjusted in a payoff statement provided by AILCO, showing the payoff amount as of the Effective Date.

AILCO and iCRYO have agreed to terms for payment and treatment of ALICO′s claim and will receive payment from iCRYO pursuant to those terms beginning as of the Effective Date (the "AILCO Payoff Amount").  As consideration of iCRYO′s agreement to make payment to AILCO, all assets subject to AILCO′s lien shall be transferred to iCRYO as of the Effective Date.  Debtor

---

[4] Nothing in this treatment limits the Debtor's right to contest any difference between the Debtor's estimate of the Allowed Claim at the Effective Date and any payoff amount provided by the holder of the Claim.

[5] Prior versions of the Plan and Debtor's Schedules have misnamed AILCO as "ALICO."

shall cooperate with iCRYO in completing such transfer of assets. AILCO will retain all of its liens in all property described in its UCC Financing Statement until it has received full and final payment by iCRYO. Additionally, the Reorganized Debtor shall be entitled to a lien that is junior to the lien on this equipment that is held by AILCO and Paragon Bank in order to secure iCRYO's payments to AILCO and Paragon Bank. Upon the final payment of the indebtedness due to AILCO and Paragon Bank, all lienholders shall execute a release of their liens, which will include a release of their UCC-1 financing statements on file with the Texas Secretary of State. If a release of liens and a release of the UCC-1 financing statement is not signed by a lienholder, iCRYO shall have authority to execute and file any such releases after the full and final payment of all amounts due to AILCO and Paragon Bank.

iCRYO**Impairment**.  Impaired.

## C.   Class 3 – Priority Claims

**Description**.  Class 3 is an empty class. With the exception of administrative priority claims and certain unclassified claims described in Section V(C), above, Debtor has no creditors with claims that would be entitled to priority under 11 U.S.C. § 507.

**Treatment**.  If a claim is allowed in this class, holders of such claims will be paid in full, in deferred cash payments, from the Debtor's future Disposable Income after Administrative claims, Priority Tax Claims, and Allowed Claims in Classes 1 and 2 are paid in full.

**Impairment**.  n/a.

## D.   Class 4 – General Unsecured Claims

**Description**.  Class 4 consists of the general, unsecured claims listed in EXHIBIT C as well as those portions of tax claims and secured claims described above that are treated as general unsecured claims in Class 4.

**Treatment**.  Holders of Allowed Claims in Class 4 will be paid all proceeds remaining after payment of allowed administrative claims and all required cash payments to holders of allowed claims in Classes 1 through 3. This is estimated to result in no more than a *di minimis* payment to holders of Allowed Claims.

**Impairment**.  Impaired.

## E.   Class 5 – Equity Interests of the Debtor

**Description**.  Class 5 consists of the equity interests of the Debtor's Member, Hoop Loops, LLC.

**Treatment**.  As a result of confirmation of this Plan, Hoop Loops, LLC will retain its membership interest in the Debtor. Upon the distribution of all cash and other assets to the holders of Allowed Claims in Classes 1 through 4, the Debtor's Management will wind-up and dissolve the Debtor in

accordance with applicable nonbankruptcy law at such time as Management, in its business judgment, deems proper.

Except as to physical assets that are abandoned because they are of no economic value to the Estate or any creditor in Class 1 or 2, the Debtor's Member shall receive no dividend or distribution under this Plan until all administrative expense claims, allowed priority tax claims, and allowed claims in Classes 1 through 4 are paid in full.

**Impairment**.  Impaired.

# VI.
## Allowance and Disallowance of Claims

### A.  Disputed claim

A *disputed claim* is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either:

1.  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

2.  no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### B.  Objections to claims

Claims objections must be made by:

1.  For a proof of claim filed prior to the Effective Date, not later than 30 days after the Effective Date; or

2.  For a proof of claim filed after the Effective Date but before the Bar Date, not later than 30 days after the date the proof of claim is filed.

### C.  Delay of distributions on a disputed claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

### D.  Anticipated claims objections

The Debtor does not anticipate the need to object to any claims on file as of the filing date of this Plan. Nonetheless, the Debtor reserves the right to object to any claims made, especially those claims made after the filing of this Plan.

### E.   Settlement of disputed claims

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

### VII.
### Provisions for Executory Contracts and Unexpired Leases

### A.   Assumed executory contracts and unexpired leases

The Debtor is not seeking to assume any contract or unexpired lease that was executory as of the Petition Date.

### B.   Rejected executory contracts and unexpired leases

The Plan constitutes a motion to reject all other executory contracts and unexpired leases to which the Debtor is a party. This includes, but is not limited to:

1.   the Lease Agreement with Brixmor Holdings 12 SPE, LLP, and

2.   the Franchise Agreement with iCRYO Franchise Systems, LLC.

If the rejection by the Debtor pursuant to the Plan or otherwise of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely proof of Claim or a proof of Claim that is deemed to be filed timely under applicable law, then such Claim will be forever barred and unenforceable against the Debtor's Bankruptcy Estate, unless a proof of Claim is filed with the clerk of the Court and served on counsel for the Debtor within thirty (30) days after entry the Confirmation Order.

### 1.   Special provisions related to rejection of Lease Agreement—Brixmor Holdings 12 SPE, LLP

As of the Effective Date, the Debtor's rights and obligations under the Lease Agreement shall be assumed by and assigned to iCRYO for all purposes, and the Debtor, the Debtor's Managers, and the Debtor's Members shall have no further liability for any lease obligation following the Effective Date.

Notwithstanding any other provisions of this Plan, i all post-petition Lease Agreement rental obligations of the Debtor will be paid by iCRYO pursuant to the following terms:

1.   March 2025 rent shall be paid no later than March 17.

2.   Rent for April 2025 and thereafter shall be paid in accordance with the Lease Agreement.

3. 50% of the cure payment agreed to between Brixmor and iCRYO shall be paid on, or before, May 1, 2025.

4. The remaining 50% of the agreed upon cure shall be paid over a period of 24 months, beginning on June 1, 2025.

The Debtor shall not be required to pay any post-petition obligation for rent or any late charges as an administrative priority expense or as a secured or unsecured claim under the Plan.

Notwithstanding any other provisions of this Plan, in rejecting the Lease Agreement, the Lessor shall not be entitled to any general unsecured claim for any prepetition amounts for unpaid rent or other charges nor any rejection claim pursuant to 11 U.S.C. § 502(g) shall be deemed to be disallowed.

**2. Special provisions related to rejection of Franchise Agreement—iCRYO Franchise Systems, LLC**

Except for Paragraph 10.1.2 of the Franchise Agreement, iCRYO's rights under the Franchise Agreement are fully preserved. Upon the Effective Date, the Franchise Agreement shall be rejected and terminated. However, nothing in this Section is intended to limit any prepetition claim of iCRYO in Class 4.

## VIII.
## Post-Confirmation Management

After the Confirmation Date, Lindsay Dalton and Shaun Six will continue as the Managers of the Reorganized Debtor. Management shall not be entitled to any compensation for their services.

## IX.
## Means for Implementation of the Plan

### A. Assumption of Lease Agreement by iCRYO

On the Effective Date, iCRYO will assume the Lease Agreement with Brixmor Holdings 12 SPE, LLP and take possession and control of all physical assets within the leased premises known as Store #13B at 3839 Bellaire Blvd., Houston, TX 77025 (the "Post-Confirmation Franchise").

### B. Payment of secured claims by iCRYO

Following the Effective Date, iCRYO will make payment of all secured claims that are secured by liens on the equipment and physical assets located at the leased premises known as Store #13B at 3839 Bellaire Blvd., Houston, TX 77025. This includes those allowed claims in Classes 1 and 2.

### C.   Retained claims

Except as otherwise provided in the Plan, all causes of action that the Debtor and the Estate may hold against any person or entity shall be retained by the Bankruptcy Estate and may be prosecuted, after the Effective Date, to the extent necessary to pay all administrative expense claims, priority tax claims, and allowed claims in Classes 1 through 4.

The Reorganized Debtor specifically retains all claims the Estate may have against iCRYO Franchise Systems, LLC and its affiliates.

Unless agreed by holders of claims in Classes 1 and 2 and the United States Trustee, no special litigation counsel may be retained by the Reorganized Debtor to prosecute any retained claim except as authorized by the Bankruptcy Court.

### D.   Distributions by Debtor under a consensual Plan

If the Plan is confirmed as a consensual plan, the service of the Subchapter V Trustee shall terminate upon the Effective Date, and all Plan payments of Allowed Claims shall be made by the Reorganized Debtor.

### E.   Distributions by Debtor under a nonconsensual Plan

If the Plan is confirmed as a nonconsensual plan, the Subchapter V Trustee will make all Plan payments of Allowed Claims in accordance with 11 U.S.C. § 1194(b).

### F.   Periodic Reporting

After the Confirmation Date, the Debtor shall file with the Bankruptcy Court monthly reports in a form reasonably acceptable to the U.S. Trustee. On or after the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee until the earliest of this chapter 11 case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Court.

### G.   Access to Debtor's business premises

Effective upon the entry of a Confirmation Order, Debtor shall provide iCRYO immediate and unrestricted access to the Debtor's business records and business premises that is currently leased from Brixmor Holdings to inspect and evaluate the condition of the premises and equipment therein, speak with employees, order supplies, and any other purpose related to the transition of the business to iCRYO's ownership. Debtor and its employees shall cooperate and provide all reasonable information and documents requested by iCRYO.

### H.   Interim provisions between Confirmation Date and Effective Date

Effective upon the entry of a Confirmation Order and prior to the Effective Date, the following shall apply:

1. iCRYO shall pay all rent due to Brixmor Holdings no later than March 17, 2025.

2. iCRYO shall insure the business premises and all equipment, fixtures, and other personal property at the business premises, as required by the Lease Agreement with Brixmor Holdings, effective on March 15, 2025, and provide proof of insurance to the Debtor, the Subchapter V Trustee, and the United States Trustee.

3. Prior to March 17, 2025, the Debtor will continue to operate the business and be responsible for payment of all expenses of the business with the exception of payments to Paragon Bank, AILCO, and Brixmor Holdings.

4. Upon the execution of the assignment of the Lease Agreement and payment of rent due by March 17, 2025, iCRYO shall have the right to fully occupy the business premises above and beyond the provisions in Section G, above, and operate its business therein, subject to the terms of the Lease Agreement. Nothing herein shall require iCRYO's retention of the Debtor's employees, assumption of the Debtor's contracts or any other business transactions or agreements entered into by the Debtor, or assumption of, or any obligation to pay, any of the Debtor's debt except as specifically required in this Plan.

## X.
## Effect of Confirmation

### A.   Binding Effect of Confirmation

Upon confirmation and the occurrence of the Effective Date, the provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (i) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Effective Date except as permitted under the Plan and (ii) any derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

### B.   Injunctions related to Debtor

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate or the Debtor will be permanently enjoined, on and after the Consummation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Debtor's Bankruptcy Estate, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Debtor's Bankruptcy

Estate on account of any such Claim; provided, however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under the Plan and Plan Documents.

## C.   Injunctions related to Debtor's members

The members comprising the interest holders in Class 5 are prohibited from making any changes to the management of the Debtor until all provisions of the Confirmed Plan have been satisfied.

## D.   Vesting of Assets

To the extent not otherwise inconsistent with any other provision of this Plan, all property of the Estate shall vest with the Reorganized Debtor on the Effective Date of this Plan. However, if the Reorganized Debtor defaults in performing under the provisions of the Plan and the chapter 11 case is converted to Chapter 7, all property vested in the Reorganized Debtor, all subsequently acquired property owned as of or after the conversion date, and all Retained Claims shall revest and constitute property of the Estate in the chapter 7 case.

## E.   Exculpation and Limitation of Liability

Neither the Debtor nor the Subchapter V Trustee will have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, any actions taken in the Debtor's Bankruptcy Case, or the pursuit of confirmation of the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan Documents, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor, the Subchapter V Trustee, or any person or entity released as part of a settlement agreement approved by final order entered by any Judge of the United States Bankruptcy Court for the Southern District of Texas for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan Documents.

## XI.
## Discharge

In accordance with 11 U.S.C. § 1141(d)(3), the Debtor will not receive any discharge of debt in this bankruptcy case.

## XII.
## Other Provisions

### A.   Employment of professionals after the Effective Date

Subject to the approval of the Court under the standards set forth in 11 U.S.C. § 327, the reorganized Debtor may employ professionals to assist it in effectuating the Confirmed Plan.

### B.   Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

### C.   Reservations of right to amend Plan

The Debtor reserves the right to amend this Plan at any time prior to Confirmation in accordance with 11 U.S.C. § 1193(a). The Debtor reserves all rights to modify this Plan after Confirmation in accordance with 11 U.S.C. §§ 1193(b) and 1193(c).

### D.   Alternative plans of reorganization

The proposed Plan affords the holders of Claims the maximum potential for realization of the Debtor's assets and is in the best interest of the holders. If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtor under Chapter 7; and (iv) dismissal of the Chapter 11 case.

If the Plan is not confirmed, other parties in interest could attempt to propose a different plan or plans. However, such plans, might involve other forms of reorganization or liquidation of the Debtor's operations and assets. Any other alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little to no benefit.

### E.   Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### F.   Headings

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## G. Controlling effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## H. Retention of jurisdiction

Under 11 U.S.C. §§ 105(a) and 1142, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

    a. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the allowance or priority of Claims or Interest;

    b. Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims;

    c. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

    d. Effectuate performance of and payments under the provisions of the Plan;

    e. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

    f. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

    g. Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

    h. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

i.   Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

j.   Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

k.   Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Bankruptcy Case;

l.   Hear and determine matters concerning state, local, and federal taxes in accordance with 11 U.S.C. §§ 346, 505, and 1146;

m.   Hear and determine all matters related to the property of the Debtor's Bankruptcy Estate from and after the Consummation Date;

n.   Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

o.   Enter a final decree closing the Debtor's Bankruptcy Case.

DATED: March 3, 2025.

HTX Wellness Group, LLC

*/s/ Lindsay Dalton*
By: Lindsay Dalton
Manager

*Plan Proponent*

Pendergraft & Simon, LLP

*/s/ William P. Haddock*
William P. Haddock
  Texas Bar No. 00793875
  S.D. Tex. Adm. No. 19637
Leonard H. Simon
  Texas Bar No. 18387400
  S.D. Tex. Adm. No. 8200
2777 Allen Parkway, Suite 800
Houston, TX 77019

Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for Plan Proponent*

Exhibit A
# HTX Wellness Group, LLC
## case no. 24-34239
## Chapter 7 Liquidation Analysis
Based upon Debtor's Schedules with adjustments for Post-Petition Changes

Note

**ESTIMATED AMOUNTS RELIAZABLE FROM LIQUIDATION OF ASSETS**

| | | | |
|---|---|---|---|
| Cash on hand at 9/30/2024 | | $ 6,455.87 | a |
| | | | |
| Accounts Receivable | | | |
| Book value | $ 500.00 | | |
| less: doubtful/uncollectible | - | 500.00 | |
| | | | |
| Inventory of IV supplies | | 1.00 | b |
| | | | |
| Office furniture, fixtures and equipment | | | |
| Office furniture & furniture in showroom | $ 29,621.00 | | |
| Office equipment, computers, printers | 6,050.00 | 35,671.00 | |
| | | | |
| Machinery & equipment | | | |
| Whole-body cryotherapy chamber | 100,000.00 | | |
| 2, Jacuzzi infrared sauna units | 17,000.00 | | |
| Local nitrogen machine | 10,000.00 | | |
| Miscellaneous medical equipment | 588.00 | | |
| Red light bed | 85,000.00 | | |
| Compression therapy set | 6,000.00 | | |
| "iCRYO" branded items (seat covers, robes, stationary) | - | 218,588.00 | c |
| | | | |
| Intangible & intellectual property | | 100.00 | |
| | | | |
| Claims against Third Parties | | - | |
| | | | |
| **ESTIMATED AMOUNT AVAILABLE FOR PAYMENT OF ALLOWED CLAIMS** | | $ 261,315.87 | |
| | | | |
| **less: PAYMENT OF SECURED AND PRIORITY CLAIMS** | | | |
| Estimated Administrative Claims | | | |
| Ch. 7 Trustee's fee allowed under 11 U.S.C. § 326 | $ 31,089.48 | | |
| Estimated compensation to Ch. 7 Trustee's counsel | - | | |

| | | | | |
|---|---|---|---|---|
| Estimated fees to Trustee's accountants | | 5,000.00 | | 36,089.48 |

**Secured Claims**

| | | | | |
|---|---|---|---|---|
| ALICO | $ | 43,132.32 | | |
| Paragon Bank | | 266,456.83 | $ | 309,589.15 |

| | | |
|---|---|---|
| Priority Unsecured Claims | | - |

| | | |
|---|---|---|
| Total Secured and Priority Claims | $ | 345,678.63 |

| | | |
|---|---|---|
| **Net Available for General Unsecured Claims** | $ | (84,362.76) |

| | | |
|---|---|---|
| **Total General Unsecured Claims** | $ | 372,135.72 |

| | |
|---|---|
| **Estimated Percentage Payment to General, Unsecured Creditors** | 0.0% |

**Notes**

a. Per banking records.

Exhibit A                                    Page 2 of 2                                    Liquidation Analysis

<u>Exhibit B</u>

This exhibit is intentionally blank

Exhibit C
# Summary of General Unsecured Claims & Plan Proponent's Position on Allowance

| Creditor | Claim per Schedules Amount | Contingent | Unliquidated | Disputed | Proof of Claim* Amount | Date Filed | Objection | Plan Proponent's Position on Allowance |
|---|---|---|---|---|---|---|---|---|
| Brixmor Holdings 12 SPE, LLC ** | $  15,462.90 | | | | $  178,271.53 | 11/8/2024 | | $  159,018.99 |
| CITI Credit Card | 6,092.64 | | | | | | | 6,092.64 |
| Fidelity Brokerage Services, LLC | 26,481.00 | | | | | | | 26,481.00 |
| Fit Water | 6,005.00 | | | | | | | 6,005.00 |
| iCRYO Franchise Systems | 80,000.00 | | | | | | | 80,000.00 |
| JP Morgan Chase Bank NA | 38,686.22 | | | | 38,433.09 | 10/18/2024 | | 38,433.09 |
| Northwest Mutual | 39,105.00 | | | | | | | 39,105.00 |
| PKF Texas | 17,000.00 | | | | | | | 17,000.00 |
| | | | | | | | | - |
| | | | | | | | | - |

Total Allowed General Unsecured Claims  $   372,135.72

**Notes**

\* Reflects claims filed as of December 2, 2024. These amounts are subject to change as the Claims Bar Date was November 20, 2024, and the deadline for claims by governmental units is March 13, 2025.

\*\* Claimed amount includes $19,252.54, which is being treated as an administrative priority claim. The amount shown above is net of the administrative priority claim.

Exhibit C                    Page 1 of 1                    Summary of General Unsecured Claims